Peelle, Ch. J.,
delivered the opinion of the court:
The claimant, a first lieutenant in the Ee venue-Cutter Service (with the pay and corresponding- rank of captain in the Army, sections 2 and 3, 32 Stat. L., 100), sues to re: cover under the act of March 2, 1901 (31 Stat. L., 903), the 10 per cent increase allowed by that act to officers of the Army on their pay proper for service- beyond the continental limits of the United States and the Territories contiguous thereto from the date of departure therefrom to the date of return thereto.
On May 21, 1902, the Acting Secretary of the Treasury addressed to the claimant a communication, of which the following is a copy:
*187 “ Treasury Department,
“ Office 'of ti-ie Secretary,
“'Washington, May 21, 1902.
“ Lieutenant G. L. Carden, R. C. S.,
“World’s Fair Headquarters, St. Louis, Mo.
“ Sir : Under the provisions of section 23 of tbe act approved March 3, 1901, you are hereby assigned to duty at the Louisiana Purchase Exposition at St. Louis, and you will report in person to the president of the exposition for duty. This order to take effect as of the date of its receipt.
“ It is understood that while serving under this detail you will be allowed only duty pay, without any allowances.
“ Vouchers for your April compensation are herewith inclosed, which you will subscribe and swear to and return to the Department for settlement.
“ Respectfully, O. L. Spauedino,
“Acting Secretary.”
Section 23 of the act of March 3, 1901 (31 Stat. L., 1445), under which the foregoing assignment purports to have beén made, is as follows:
“ Seo. 23. That the Secretary of War be, and he hereby is, authorized, at his discretion, to detail for special duty, in connection with the Louisiana Purchase Exposition, such officers of the Army as may be required, to report to the general commanding the Department of Missouri; and the officers thus detailed shall not be subject to loss of pay or rank on account of such detail, nor shall any officer or employee of the United States receive additional pay or compensation, because of services connected with said exposition, from the United States or from said exposition.”
In compliance with the assignment thus made, the claimant, on May 24,1902, reported to the president of the Louisiana Purchase Exposition at St. Louis, Mo. Thereafter,. on ’ July 28, 1902, the claimant, at his request therefor, was granted permission by the Acting Secretary of the Treasury to leave the limits of the United States for service in connection with the said exposition and to remain absent for such period as might be necessary to enable him to perform the duties assigned to him. Nothing further was said about the pay the claimant was to receive.
Thereafter, on or about July 31, 1902, the claimant, in compliance with the instructions given to him by the president of the exposition company, through Thomas M. Moore, *188 chief of the machinery department of said exposition, sailed by the steamship Columbia from New York to Hamburg, Germany. After visiting the plants of the leading machinery houses of Germany, about which he. was directed to report, and looking up and reporting upon the merits of special features in the line of economics there and in Genoa, Belgium, France, Switzerland, Italy, Sweden, and the United Kingdom, he returned to the United States, arriving in New York April 11, 1903.
For this service abroad the claimant contends that he is entitled to recover the 10 per cent increase on his pay proper provided for by the act of March 2, 1901, supra, which reads:
“ That hereafter the pay proper of all officers and enlisted men serving beyond the limits of the States comprising the Union, and the Territories of the United States contiguous thereto, shall be increased ten per centum for officers and twenty per centum for enlisted men over and above the rates of pay proper as fixed by law for time of peace, and the time of such service shall be counted from the date of departure from said States to the date of return thereto.”
Section 23 of the act of March 3, 1901, supra, under which the Acting Secretary of the Treasury assigned the claimant to duty, in words authorized only the Secretary of War to make such detail from the Army. But assuming that the Secretary of the Treasury had the authority under that section, or independent of it, to assign the claimant to the duty he did, neither the statute nor the order of assignment carried with it the right to “ additional pay or compensation ” for such service. The order of assignment expressly states that “ it is to be understood that while serving under this detail you will be allowed only duty pay, without any allowances,” while the statute authorizing the detail not only prohibits additional pay from the United States to officers of the Army thus detailed, but prohibits such pay “ from such exposition.”
The Comptroller ruled against the claimant’s right to the 10 per cent increase on the ground that the commissioned officers in the Bevenue-Cutter Service could only be regarded as serving at foreign stations within the meaning of the act *189 granting such increase when they are assigned thereto as officers of the Revenue-Cutter Service.
It was evidently the intention of Congress to grant such increase to the officers of the Army who might be required to render- service abroad in the line of their duty as such officers, but that Congress did not regard service in connection with the exposition as service pertaining to the officers of the Army is manifest from the provisions of section 23 of the act of March 3, 1901, supra, authorizing the Secretary of War to detail such officers for special duty in connection therewith. This is made still more clear by section 14 of the same act, which provides:
“ Any provision of law which may prohibit the detail of persons in the employ of the United States to other service than that which they customarily perform shall not apply to persons detailed for duty in connection with said Louisiana Purchase Exposition.”
That provision would not have been' necessary had such service pertained to the Army.
If this be true in relation to the officers of the Army, it applies with more force to officers of the Revenue-Cutter Service, -as section 23, authorizing details in connection with the exposition, does not in terms apply to the Revenue-Cutter Service. But if we should hold that, by reason-of said section 14, it does impliedly so extend, then the question arises as to the pay.
The language of section 23 expressly prohibits officers of the Army so detailed from receiving any additional pay or compensation for such service, either from the United States or from such exposition. But, in our view of the case, the claimant’s service in connection with the exposition was not service within the line of duty beyond the limits of the United States contemplated by the act March 2, 1901, as the basis for such increase in pay.
We might stop here, but recently in the case of Thomas v. United States (195 U. S. R., 420), the court, in considering the question of the right of the claimant in that case (an officer of the Navy) to the increase of 10 per cent on the sea pay of his grade while serving in foreign waters, held that the statute granting such officers the same pay and allowances *190 as officers of the Army of corresponding rank did not apply to naval officers serving in foreign waters, as their natural and normal duty was sea service, while the service of officers of the Army at sea or on foreign shores was exceptional and that therefore the act granting to officers of the Navy the same pay as officers of corresponding rank in the Army did not mean that such increase to such officers of the Army for exceptional service should apply to officers of the Navy in the performance of their normal sea duty.
In the Wiley case (40 C. Cls. R., 406), being the claim of an officer in the Be venue-Cutter Service for the 10 per cent increase while serving in Alaska and Alaskan waters, the court, in applying to such officer the ruling in the Thomas case, said:
“ The Bevenue-Cutter Service implies, in the main, service on the water, and therefore it may be said to be the normal duty of the officers in that service.
“ ‘ The intention of Congress,’ says the court in the Thomas case, ‘ was evidently to put officers of the Army and Navy on the same footing with respect to their general pay, and to make the act prospective in its application to future legislation, so that if Congress should thereafter raise the general .pay of army officers as fixed by Bevised Statutes, section 1261, a like increase should apply to navy officers. It does not, however, follow that Congress may not increase the pay of army officers for services nr particular places or under special circumstances without thereby intending that the same increase shall apply to naval officers performing the same service under like circumstances.’ ”
That ruling is equally applicable to officers in the Bevenue-Cutter Service.
❖ * * iji *
“ That the service of such officers serving in Alaska and Alaskan waters is more expensive and attended with more hardships, there can be no doubt, but we are unable to see any distinction between this and the Thomas case respecting naval officers, and the claimant’s petition must therefore be dismissed.”
The present .case differs from that in this, that here the claimant was on shore performing special services in no way connected with his duties as an officer of the Bevenue-Cutter Service. His assignment to duty was rather in the nature of *191 a leave of absence with duty pay than a detail for service within the line of official duty abroad.
That the special service rendered by the claimant was of value and his pay perhaps inadequate does not change the law which we are called upon to construe. Believing that the service by the claimant “ beyond the limits of the United States ” was not service within the line of his duty as an officer in the Revenue-Cutter Service, and that the statute under which his assignment purports to have been made prohibits additional “ pay or compensation because of service connected with said exposition,” we must hold that he is not entitled to recover, and his petition is therefore dismissed.